528 P.2d 859

**Sharon E. ROTTENBERG, Appellant,**

v.

**CARTWRIGHT SCHOOL DISTRICT NO. 83 and Board of Trustees, Cartwright School District No. 83, Appellees.**

**No. I CA–CIV 2112.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 5, 1974.

Rehearing Denied Jan. 2, 1975.

Review Denied Feb. 4, 1975.

**474**

Scoville, Hofmann & Salcito, P.C. by Daniel R. Salcito, Phoenix, for appellant.

Moise E. Berger, Maricopa County Atty., by Albert Firestein, Deputy County Atty., for appellees.

## OPINION

STEVENS, Judge.

This appeal arises out of the decision of the Board of Trustees to not renew the contract of a probationary teacher and from the decision of the Superior Court denying the teacher judicial relief.

Sharon E. Rottenberg (teacher) was in her third year as a probationary teacher [A.R.S. § 15–251(A)(3)] at the Holiday Park School (school). On 11 March 1971 Byron A. Berry, Jr., Ed.D., the Superintendent (Superintendent) of Cartwright School District No. 83 (District) which district included the school, gave the teacher written notice that her contract would not be renewed for the following school year. A.R.S. § 15–259 requires that the notice "incorporate * * * a statement of the reasons for the * * * termination." The notice did so specify, enumerating certain dissatisfactions with her teaching performance.

The teacher, through her counsel, demanded that the district Board of Trustees (Board) grant her a hearing. The Board entertained the opinion that while a continuing teacher [A.R.S. § 15–251(A)(2)] is entitled to a hearing as a matter of right after receiving a notice that the teacher's

contract will not be renewed [A.R.S. § 15–254], no such right is granted to or is vested in a probationary teacher. A.R.S. § 15–259 expressly so states. Nevertheless, the Board decided to afford the teacher the privilege of a hearing. The hearing consumed the evenings of 20 and 25 May 1971. Prior to the hearing the teacher and her attorney received a "letter of dismissal expanded."

The teacher and her attorney were in attendance and were granted the right of cross examination, together with the privilege of presenting evidence in the same manner as though she was a continuing teacher. Forman v. Creighton School District No. 14, 87 Ariz. 329, 351 P.2d 165 (1960). The strict rules of evidence are not required even in a hearing for a continuing teacher. Forman, supra.

The hearing was conducted by the Board. Albert Firestein, a Deputy County Attorney who devotes much of his time to school problems, presented the evidence in support of the notice of termination and the President of the Board ruled on the procedural and evidentiary matters.

After the Board had had the opportunity to review the reporter's transcript of the hearing and the other evidence presented, the Board with the aid of the Superintendent, prepared and entered its findings upholding the Superintendent's decision to not renew the teacher's contract for the fourth consecutive year. The teacher thereby lost her opportunity to acquire the status of a continuing teacher.

Had the teacher been a continuing teacher A.R.S. § 15–254 requires not only that there be a hearing but that there must be "good and just cause" for the non-renewal of the contract, which cause shall not include "religious or political beliefs or affiliations" with certain statutory exceptions. Had the teacher been a continuing teacher she would have had a statutory right to appeal the Board's decision to the Superior Court. [A.R.S. § 15–255]. These same provisions do not apply to the decision to not renew the contract of probationary teachers.

There being no right of appeal, the teacher sought a judicial review by way of a special action. The record of the May 1971 hearings, three depositions, extensive memoranda and oral argument were presented to the trial court. The trial court upheld the Board and this appeal followed.[1]

In addition to Forman, supra, the following "teachers cases" in Arizona are of interest. Tempe Union High School Dist. v. Hopkins, 76 Ariz. 228, 262 P.2d 387 (1953); Chesley v. Jones, 81 Ariz. 1, 299 P.2d 179 (1956); Johnson v. Board of Education, 101 Ariz. 268, 419 P.2d 52 (1966);

1. We quote the reasons expressed by the trial court in its memorandum of decision:

"* * * * the court finds and concludes as follows:

1. A School Board may refuse to renew the contract of a probationary teacher by giving timely written notice, setting forth the reasons for non-renewal in accordance with A.R.S. Section 15–259.

2. The School Board is not required to set forth in detail the basis for non-renewal of the contract or to show good cause therefor. It is not required to provide a hearing to the probationary teacher. Tempe Union High School District v. Hopkins, 76 Ariz. 228, 262 P.2d 387 (1966), School District No. 8, Pinal County v. Superior Court, 102 Ariz. 478, 433 P.2d 28 (1967).

3. The non-renewal of a contract with a probationary teacher in accordance with A.R.S. Section 15–259 does not violate the due process and equal protection clauses of the Arizona or United States Constitutions.

4. The defendant has not waived its right to assert the foregoing defenses to plaintiff's claim by conducting the hearing before the Board.

5. The defendant has not waived its right to assert the foregoing defenses by either the written stipulation between the parties or by the failure to assert such defenses in earlier stages of the proceedings.

By reason of the foregoing, the court does not determine whether or not the hearing which was in fact conducted demonstrates sufficient cause for non-renewal of the probationary teaching contract, nor does it determine whether such a hearing in fact is consistent with constitutional due process principles."

School District No. 8, Pinal County v. Superior Court, 102 Ariz. 478, 433 P.2d 28 (1967); and Indian Oasis School District No. 40 v. Zambrano, 22 Ariz.App. 201, 526 P.2d 408 (1974).

■ Our Supreme Court, in School District No. 8, Pinal County, supra, considered the problem faced by a probationary teacher whose contract has not been renewed. The Court said:

"We hold, therefore, that the notice of dismissal or termination contemplated by the statute in the case of probationary teachers need not specify in detail the time, place or circumstances of the conduct which the school administrator or school board finds detrimental to her efficiency as a teacher, and that the language of a notice is sufficient if it simply states undesirable qualities which merit a refusal to enter into a further contract.

"It being our opinion that the Superior Court was without jurisdiction to supercede the discretion of the School District in the discharge of Mabel F. Forseth, the alternative writ of prohibition is made permanent." 102 Ariz. at 480–481, 433 P.2d at 30–31.

The March 1971 notice of non-renewal met the statutory requirements applicable to probationary teachers and neither the Superior Court nor this Court may supercede the discretion exercised by the Board.

In Johnson and Indian Oasis, supra, the distinction was drawn between terminating the employment of the probationary teacher for the balance of the contract year and the decision to not renew the employment for the ensuing year. The problem is not before us.

The teacher relies heavily on The Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The issue in Roth was the non-renewal of a contract of a teacher who did not enjoy tenure and the failure to renew the contract was upheld. We quote in part from Roth:

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case.

\*　　\*　　\*　　\*　　\*　　\*

"In the present case, however, there is no suggestion whatever that the respondent's interest in his 'good name, reputation, honor, or integrity' is at stake.

\*　　\*　　\*　　\*　　\*　　\*

"Hence, on the record before us, all that clearly appears is that the respondent was not rehired for one year at one university. It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.

\*　　\*　　\*　　\*　　\*　　\*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

\*　　\*　　\*　　\*　　\*　　\*

"Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." (Emphasis theirs)

The Ninth Circuit of the United States Court of Appeals in Jablon v. Trustees of the California State Colleges, 482 F.2d 997,

(1973), gave consideration to the meaning of Roth. Therein the Court stated:

"We also disagree with the district court's alternate ground for its decision. The court found that the College's decision not to rehire Jablon, coupled with the president's charges against Jablon, imposed a stigma upon Jablon which damages his standing in the community and his opportunities for future employment; therefore, he was entitled to a hearing on his nonretention by due process concepts, citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972).

"We think the court below misapplied Roth. A hearing is only required when a charge is made that 'might seriously damage his standing and associations in the community . . . for example, that he had been guilty of dishonesty or immorality. Had it [the State] done so, this would be a different case. For [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' . . ." Roth, supra, at 573, 92 S.Ct. at 2707.

"Thus, only a limited type of stigma that seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities requires a hearing. In the instant case, Jablon was not so disadvantaged. The College did not attack his honesty or integrity. The reasons raised at the grievance hearing all related to his academic performance at the College, which did not deem him to be a good enough overall teacher and scholar to merit retention. This is not the type of stigma that the Court was referring to in Roth. Moreover, the fact that this may have a deleterious effect upon Jablon's future employment prospects is unfortunate, but the Supreme Court specifically noted in Roth, supra, at 574, n. 13, 92 S.

Ct. 2701 that this 'kind of foreclosure of opportunities' does not give rise to a right to a hearing. Accordingly, due process concepts do not require that the college grant Jablon another hearing on the issue of his retention."

Although in a different setting, this Court in its 14 November 1974 opinion in Dixon v. Osmon, 22 Ariz.App. 430, 528 P. 2d 181, discusses Roth and recognizes that there can be a situation wherein "the State could not dismiss an employee for a constitutionally impermissible reason."

We have read the transcript of the May hearings and the depositions. We find an absence of any showing that the nonrenewal of the teacher's contract was for "a constitutionally impermissible reason."

Classifying teachers as probationary and as continuing teachers is a reasonable classification. The granting of rights and privileges to continuing teachers which are denied to probationary teachers is reasonable. It is reasonable that teachers with tenure have employment safeguards which are not available to probationary teachers.

The teacher had no right to a hearing. In granting the hearing the Board expressly provided that the hearing was a matter of grace and not a matter of right which did not constitute a waiver by the Board and did not convert the hearing to an A.R.S. § 15–254 "good and just cause" hearing.

The teacher complains that the Board was both judge and jury and that she was deprived of due process when the Board conducted the hearing. We do not agree. The Board and only the Board has the right and duty to employ probationary teachers and to renew or to decline to renew their contracts.

Affirmed.

DONOFRIO, P. J., and OGG, J., concur.